# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEONARD A. ROBINSON, et al.,      )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )     1:20CV47
                                  )
CASSANDRA L. BROOKS, et al.,      )
                                  )
          Defendants.             )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter first came before the undersigned United States Magistrate Judge on the "Application[s] to Proceed in District Court without Prepaying Fees or Costs" (the "Applications") (Docket Entries 1, 2), signed by Leonard A. Robinson (<u>see</u> Docket Entry 1 at 2)[1] and Peggy M. Hairston Robinson (<u>see</u> Docket Entry 2 at 2) and filed via mail (<u>see</u> Docket Entry 3-2 (mail packaging)), along with a pro se "Complaint and Request for Injunction and Stay Order" (the "Original Complaint") (Docket Entry 3), signed <u>only</u> by Peggy M. Hairston Robinson in the block "For Parties <u>Without</u> an Attorney" (<u>id.</u> at 10 (emphasis added)).  The Original Complaint purported to assert claims for both Leonard A. Robinson and Peggy M. Hairston Robinson, as well as an organizational Plaintiff, Peggy M.H. Robinson, APLC.  (<u>See</u> <u>id.</u> at 1-2.)  The undersigned Magistrate Judge thereafter entered an Order and Recommendation "grant[ing] the Applications for the limited purpose of recommending dismissal

---

1  Citations to Docket Entry pages refer to the CM/ECF footer.

of this action without prejudice to Plaintiffs filing a new [c]omplaint which corrects the significant defects of the [Original] Complaint." (Docket Entry 12 at 1.) The Order and Recommendation identified "patent deficiencies [that] render[ed] the [Original] Complaint . . . frivolous" (id. at 7), observed that it relied on "conclusory allegations that . . . fail[ed] to plausibly establish any claim" (id.), and explained that the "individual Plaintiffs may not pursue pro se litigation . . . on behalf of the organizational Plaintiff" (id. at 8-9).

The Docket reflects no objections to the Order and Recommendation; however, using a CM/ECF log-in she acquired before she lost her Louisiana law license, see In re Robinson, 232 So.3d 1232, 1251 (La. 2017) (permanently disbarring Peggy M. Hairston Robinson); see also In re Robinson, 242 So.3d 571 (La. 2018) ("This court's judgment of [permanent disbarment] became final and definitive when rehearing was denied on January 30, 2018. [Louisiana] Supreme Court Rule[s] . . . do[] not permit any further rehearing applications. Accordingly, no further filings shall be accepted in this matter."), Peggy M. Hairston Robinson electronically filed a "Memorandum" lacking signatures of Leonard A. Robinson and Peggy M. Hairston Robinson (as they appeared on the Applications) and containing instead only a typewritten notation of "/s/ Peggy M.H. Robinson" (Docket Entry 14 at 7). The Memorandum "agree[d] with the conclusion in [the Order and] Recommendation

that [the Original] Complaint failed to state a claim, but request[ed] leave to file an amended complaint." (Text Order dated May 28, 2020; see also Docket Entry 14 at 6 ("[The] Magistrate [Judge] is correct . . .; however, Plaintiffs[] suggest to the Honorable Court[] that[ the] Federal Rules of Civil Procedure[] provide[] an additional remedy for such deficient pleadings . . . and this[ C]ourt may exercise its plenary power and allow Plaintiffs an opportunity to amend the law suit accordingly.").)

The undersigned Magistrate Judge overlooked the signature omission in the Memorandum – as well as its improper electronic filing, see M.D.N.C. LR 11.1(c) ("Pro se parties must file documents in person at the Clerk's Office or by mail, and any person appearing pro se may use electronic filing only with the permission of the assigned Judge." (italics omitted)) – and, because, "[u]nder Federal Rule of Civil Procedure 15(a)(1), Plaintiffs [could] amend their pleading once as a matter of course at th[at] stage of the proceedings" (Text Order dated May 28, 2020), the undersigned Magistrate Judge "set a deadline for Plaintiffs to file any amended complaint" (id.). At that deadline, Peggy M. Hairston Robinson (once more improperly) electronically filed an "Amended Complaint" (the "Unsigned Amended Complaint") (Docket Entry 22), purportedly "submitted" by "Leonard A. Robinson" and "Peggy M.H. Robinson, individually and as Representative of the Estate of Ms. Irene F. Hairston" (id. at 19), without signatures as

appeared on the Applications (see id. (concluding with typewritten notation of "/s/ Leonard A. Robinson" and "/s/ Peggy M.H. Robinson")).[2]  She also (and, in improper fashion, on yet another occasion) electronically filed a "Petition for Writ of Attachment" (the "Unsigned Attachment Petition") (Docket Entry 33) and "Petition for Application for Arrest Warrant" (the "Unsigned Warrant Petition") (Docket Entry 34), each with only a typewritten notation of "/s/ Peggy M. Hairston Robinson" (see Docket Entry 33 at 9; Docket Entry 34 at 3).  The undersigned Magistrate Judge subsequently "requir[ed] Plaintiffs to file, on or before 10/22/2020, properly signed versions of [the Unsigned] Amended Complaint, [the Unsigned Attachment] Petition, and [the Unsigned Warrant] Petition, as required by Federal Rule of Civil Procedure 11(a)." (Text Order dated Oct. 1, 2020; see also id. (warning that "[f]ailure by Plaintiffs to correct th[at] deficiency in the time allotted will result in the striking of those filings").)

On October 22, 2020, Peggy M. Hairston Robinson (again improperly) electronically filed another "Amended Complaint" (the "Signed Amended Complaint") (Docket Entry 37), bearing solely her signature on behalf of herself "individually and as Representative of the Estate of Ms. Irene F. Hairston" (id. at 19), as well as

_____

2 Because the Unsigned Amended Complaint superseded the Original Complaint, the undersigned Magistrate Judge withdrew the prior Recommendation of dismissal, pending review of the Unsigned Amended Complaint.  (See Text Order dated July 16, 2020.)

4

another "Petition for Writ of Attachment" (the "Signed Attachment Petition") (Docket Entry 39) and another "Petition for Application for Arrest Warrant" (the "Signed Warrant Petition") (Docket Entry 38), each bearing her signature alone (see id. at 3; Docket Entry 39 at 7). The Signed Amended Complaint states that "Plaintiffs are Leonard A. Robinson, Peggy M. Hairston Robinson, individually, and Peggy M. Hairston Robinson as representative for the Estate of Irene F. Hairston." (Docket Entry 37 at 2.) It identifies eight Defendants, i.e., "Cassandra L. Brooks," "Cassidy Professional Consulting, Inc." ("CPCI"), "Attorney Bryan Thompson," "Attorney William W. Walker," "Attorney Stafford R. Peebles, Jr.," "Charles Michael Alexander," "Heather R. Alexander," and "Attorney A.L. Collins." (Id. at 2-3.) After giving a brief description of the "Property" at issue (id. at 3-4 (emphasis and all-caps font omitted)) and making a few vague statements about misconduct by unnamed individuals under the heading "Factual Allegations" and the subheading "The Debt" (id. at 4 (emphasis and all-caps font omitted)), the Signed Amended Complaint asserts these seven claims:

1) "First Claim for Relief" against "Walker and his firm [for] fraud, tampering with public records, elderly abuse, [and] conspiracy" (id. at 5 (emphasis and all-caps font omitted); see also id. at 17 (requesting, "[a]s to Count One, that Attorney Walker and his law firm be adjudicated guilty of fraud, misrepresentation, and tampering with public records and as such

5

criminally sanctioned and fined an appropriate monetary [sic] to compensate [P]laintiffs for all harm done to them in an amount to be determined by Court" and demanding "[r]estitution"));

    2) "Second Claim for Relief" against Walker and Thompson for "theft[ and] fraudulent transfer of property in violation of 28 USC 3301" (id. at 6 (emphasis and all-caps font omitted); see also id. at 17 (requesting, "[a]s to Count Two, that Attorney [] Thompson be decried and adjudicated guilty of fraud," as well as "[f]ound guilty of theft, and abuse of power [and t]hat Thompson be cited and sanctioned for cyberscoping [sic] in interstate commerce and ordered to make restitution in a monetary amount sufficient to recompense the victims in full"));

    3) "Third Claim for Relief" against Brooks for "fraudulent conveyance of immovable property in violation of 28 USC 3004 Theft by fraud and deceit" (id. at 7 (emphasis and all-caps font omitted); see also id. at 17 (requesting, "[a]s to Count Three, that [] Brooks be adjudicated guilty of (1) fraud, (2) felony theft by fraud and deceit, (3) fraudulent transfer of immovable property in violation of 28 USC [sic], (4) breach of contract,[ and (5)] malicious prosecution," as well as that "Brooks be charged and adjudicated with elderly abuse of a relative"));

    4) "Fourth Claim for Relief" against Brooks and CPCI for "avoidance of fraudulent transfer in violation of N.C. Gen[.] Stat[.] § 39-23[.]5(a)" (id. at 8 (emphasis and all-caps font

6

omitted); <u>see also</u> <u>id.</u> at 17 (requesting, "[a]s to Count Four, that an order issue from this Honorable Court to 'pierce the corporate veil' of [CPCI]" and "[t]hat all [its] tangible assets be seized and held for possible sale to satisfy debts of [P]laintiffs"));

5) "Fifth Claim for Relief" against Brooks, CPCI, the Alexanders, and Collins for "[p]iercing the [c]orporate [v]eil" (<u>id.</u> at 8 (emphasis and all-caps font omitted); <u>see also</u> <u>id.</u> at 9 (alleging in fifth claim that "Attorney A.L. Collins, Heather R. Alexander, [and] Charles M. Alexander[] were working in cahoots with alter ego Cassandra L. Brooks to move the property, Lot H, out of the reach of its rightful owners"), 18 (requesting, "[a]s to Count Five, [that] Charles M. Alexander and Heather R. Alexander be adjudicated jointly as co-conspirators to a fraudulent transfer of immovable property by theft[ and] deceit in violation of 28 USC 3304(a) [and] North Carolina Gen. Statutes and such property [be] vacated within a reasonable time and considered and adjudged a fraudulent transfer in violation of N.C. Gen. Statute § 39-23.5(a) and voided," as well as that the Alexanders "be adjudicated as bad faith trespasser[s] . . . and ordered to vacate [the] property within 45 to 60 days and sanctioned and accessed [sic] damages as applied to federal and state law violations"));

6) "Sixth Claim for Relief . . . against . . . [the] Alexander[s]" for "aware[ness] that Brooks was not the rightful

owner of the property she purported to transfer to them" (id. at 10
(emphasis and all-caps font omitted)); and

7) "Seventh Claim for Relief" against Peebles (and perhaps
Collins) for "withdrawal and negligent attorney representation[,]
breach of fiduciary duty[, and] violation of code of professional
conduct" (id. (emphasis and all-caps font omitted); see also id. at
18 (requesting that, "[a]s to Count Six [sic], Attorney Peebles be
adjudicated as guilty of legal malpractice for Leonard A. Robinson,
Peggy M. Hairston Robinson, and the Estate of Irene R. [sic]
Hairston for negligence, legal malpractice, fraud, [and] breach of
fiduciary duty," and that, "[a]s to Count Seven, Attorney A.L.
Collins be adjudicated guilty of conspiracy to fraudulently convey
immovable property in violation of 28 USC 3004 and N.C. Gen[.]
Stat. 35 [sic]," that he "be held liable in solido [sic] with other
federal tortfeasors pursuant to 28 USC 2680 and state law
statutes," and that he "be reported to N.C. Bar Association")).

The Court should dismiss this action as frivolous and for
failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B) ("[T]he
court shall dismiss [a] case [brought in forma pauperis] at any
time if the court determines that . . . the action . . . (i) is
frivolous or . . . (ii) fails to state a claim on which relief may
be granted."); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(requiring "sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face'" (quoting Bell

8

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))); Nagy v. FMC Butner, 376 F.3d 252, 256-57 (4th Cir. 2004) ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)).[3]

As an initial matter, despite notice that failure to sign the Amended Complaint would result in the striking of his claims (see Text Order dated Oct. 1, 2020), Leonard A. Robinson did not sign the Signed Amended Complaint (see Docket Entry 37 at 19). Any claims purportedly brought on his behalf therefore cannot go forward. See Fed. R. Civ. P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention."). Further, the Estate of Ms. Irene F. Hairston cannot proceed in forma pauperis, see In re Estate of Van Putten, 553 F. App'x 328, 328 (4th Cir. 2014) ("deny[ing an] estate's request to proceed IFP, as 'only a natural person may qualify for treatment in forma pauperis under

_____

    3   Although "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

9

§ 1915'" (internal brackets and bracketed material omitted) (italics in original) (quoting Rowland v. California Men's Colony, 506 U.S. 194, 196 (1993))), and Peggy M. Hairston Robinson cannot pursue this action pro se on behalf of the Estate of Ms. Irene F. Hairston because the Signed Amended Complaint does not show that she "is the sole beneficiary but . . . [rather shows that] another beneficiary's interest is implicated," Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 245 (4th Cir. 2020).[4]

Additionally, like the Original Complaint, the Signed Amended Complaint constitutes an amalgamation of "factual allegations and legal conclusions . . . lack[ing] an arguable basis either in law or in fact," Neitzke v. Williams, 490 U.S. 319, 325 (1989), and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," Iqbal, 556 U.S. at 678; see also id. (requiring "factual matter" to support claims and ruling "legal conclusions" and "conclusory

_____

4 For example, the Signed Amended Complaint recites that its claims concern "a Warranty Deed for the transfer of the homestead of Ms. Hairston to two of her daughters" (Docket Entry 37 at 4 (emphasis added)), as well as another relative's subsequent "transfer [of the property] at a time when a suit was pending in Forsyth County to determine ownership right[s]" (id. at 8; see also id. (describing "Leonard A. Robinson and Peggy M. Hairston Robinson" as "creditor[s] of the Estate of Ms. Irene F. Hairston")). Moreover, during prior litigation in this Court, "[t]he Estate [of Irene F. Hairston] and [Peggy M. Hairston] Robinson have been informed previously that Ms. Robinson would not be allowed to represent the Estate and that the Estate needed to have an attorney enter an appearance." Estate of Irene F. Hairston v. Easley, No. 1:07CV704, 2008 WL 11481852, at *1 (M.D.N.C. July 3, 2008) (unpublished), recommendation adopted, 2008 WL 11481853 (M.D.N.C. Sept. 25, 2008) (unpublished), appeal dismissed, slip op., No. 09-1870 (4th Cir. Oct. 26, 2009).

statements" insufficient).  Such obvious defects render the Signed Amended Complaint both "frivolous," <u>Nietzke</u>, 490 U.S. at 325, and insufficient to "state a claim to relief that is plausible on its face," <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted).

To begin, the "First Claim for Relief" asserts that "Walker and his firm committed fraud, tampering with public records, elderly abuse, [and] conspiracy." (Docket Entry 37 at 5 (emphasis and all-caps font omitted).)  As support for those causes of action, the first claim alleges that, "[o]n July 19, 2001[, ] Walker [] revoked [Irene F. Hairston's] authentic Power of Attorney [POA] which represents fraud.  [He] committed the state criminal act of Tampering with Public Records by revoking the POA and predetermination document. . . .  [H]e gave her the 'elderly abuse workout' of extortion, intimidation, [and] threats and forced her to sign papers . . . ."  (<u>Id.</u>)  Those conclusory statements and others in the first claim – such as (A) that, by going "to Oak Summit Rehabilitation Center to visit Ms. Hairston who was a patient" (<u>id.</u>), Walker "violat[ed] HIPPA [sic] rules and regulations" (<u>id.</u>), (B) that, by "releas[ing Ms. Hairston to two of her daughters, Walker became liable when] two weeks later [she] was left alone and had fallen" (<u>id.</u>), as he "ha[d] firsthand information [] within his reach [that] these persons just would not accept their responsibility to care for [her]" (<u>id.</u> at 6), and (C) that "Walker and his firm violated Rule 17(a) FRCP [and] are

11

liable to [P]laintiffs for tort claims under the Federal Tort Claims Act . . . and state law claims for libel, slander, malicious prosecution, [and] defamation of character" (id.) – do not suffice. See generally Iqbal, 556 U.S. at 678.[5]

The "Second Claim for Relief" likewise fails to state a claim under Iqbal because it too relies exclusively on bald assertions for its causes of action against Walker and Thompson for "theft[

_____

5 The First Claim for Relief – which consists of causes of action of Irene F. Hairston and (if they survived her death) her estate, which Peggy M. Hairston Robinson cannot litigate – also suffers from other fatal defects, including that (A) any fraud and/or civil conspiracy claims for acts committed in 2001 would fail as time-barred, see N.C. Gen. Stat. § 1-52(9) (setting three-year limitations period "[f]or relief on the ground of fraud"); Carlisle v. Keith, 169 N.C. App. 674, 685, 614 S.E.2d 542, 549 (2005) ("appl[ying] the three-year limitations period of N.C. Gen. Stat. § 1-52(5) to a civil conspiracy claim"), and (B) North Carolina does not recognize claims for elder abuse or record tampering, see Bennett v. Hospice & Palliative Care Ctr. of Alamance-Caswell, 246 N.C. App. 191, 193-95, 783 S.E.2d 260, 262-63 (2016) (declining to treat "Elder Abuse" as distinct claim); Reeve & Assocs., Inc. v. United Carolina Bank, No. 96CVS4695, 1997 WL 33446634, at *5 (N.C. Super. Ct. Oct. 6, 1997) (unpublished) ("Criminal provisions do not give rise to civil causes of action."). Moreover, these claims rely on the fact that, in "August 2001, [] Walker filed suit in 21st Judicial District Court to uproot property transfers and business affairs Ms. Hairston had perfected in August 1996." (Docket Entry 37 at 6.) Peggy M. Hairston Robinson previously attempted to litigate (in this Court) related claims against Walker arising out of that prior state case, but this Court (per now-Senior United States District Judge N. Carlton Tilley, Jr.) dismissed that federal suit for lack of subject matter jurisdiction, because it "challeng[ed] the propriety of the judgment entered by the North Carolina Superior Court in Forsyth County." Hairston v. Walker, No. 1:06CV102, 2007 WL 2112245, at *1 (M.D.N.C. July 19, 2007) (unpublished), aff'd, 280 F. App'x 300 (4th Cir. 2008). Although principles of res judicata may not apply to such dismissals, the same or similar jurisdiction/abstention issues likely would preclude litigation of the First Claim for Relief in this Court.

and] fraudulent transfer of property in violation of 28 USC 3301"
(Docket Entry 37 at 6 (emphasis and all-caps font omitted)). (See
id. at 6-7 (accusing (A) Walker of "interfer[ing] with lives and
wellbeing of [] Roy C. Hairston[ and] Irene F. Hairston . . . [by]
fil[ing] a frivolous suit without legal standing," (B) Walker of
"[t]amper[ing] with [p]ublic [r]ecords when he revoked th[e]
carefully planned predetermination document which was prepared by
a highly respected North Carolina licensed [a]ttorney,"
(C) Thompson and Walker of "conspir[ing and] collud[ing] to have
Ms. Irene F. Hairston declared incompetent after [she] fired []
Walker, who arbitrarily and without her consent revoked her [POA],"
(D) Thompson of having "stole[n] funds and mismanaged assets from
{Ms. Hairston's] estate," (E) Thompson of "[b]reach[ing] his
fiduciary duty to [Ms. Hairston]," (F) Thompson of "wast[ing] away
[Ms. Hairston's] estate," and (G) Thompson and Walker of
"conspir[ing and] retaliat[ing] against Ms. Hairston to have her
declared incompetent when she fired [] Walker from representation
on or about October 10, 2001").)[6]

---

6 The quotations above also show that, as with the First Claim
for Relief, the Second Claim for Relief purports to bring claims of
Irene F. Hairston and/or her estate, which Peggy M. Hairston
Robinson cannot litigate pro se and which (given their accrual in
2001) falter under the applicable statute of limitations.
Furthermore, the federal statutory provision cited as a basis for
the Second Claim for Relief (i.e., 28 U.S.C. § 3301) lies within
the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 et
seq., which "provides 'the exclusive civil procedures *for the
United States* to recover a judgment on a debt or to obtain, before
(continued...)

As its "Third Claim for Relief," the Signed Amended Complaint alleges that Brooks committed "fraudulent conveyance of immovable property in violation of 28 USC 3004 Theft by fraud and deceit as it is set forth fully therein." (Id. at 7 (emphasis and all-caps font omitted).) The remaining allegations "therein," however, do not "set forth fully" (or even minimally) a viable claim. First, the cited federal statutory section does not create a fraud-related cause of action; rather, it simply addresses issues of "[s]ervice of process; enforcement; [and] notice," 28 U.S.C. § 3004, under the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. §§ 3001 et seq., the statute which "provides 'the exclusive civil procedures *for the United States* to recover a judgment on a debt or to obtain, before judgment on a claim for a debt, a remedy in connection with such claim.' As the emphasized text suggests, non-governmental plaintiffs cannot invoke the statute." Kelley v. College of St. Benedict, 901 F. Supp. 2d 1123, 1130 (D. Minn. 2012) (emphasis and omission of statutory paragraph numbers in original) (internal citation omitted) (quoting 28 U.S.C. § 3001(a)). Second, the allegations of the third claim – i.e., (A) that Brooks "is a niece, granddaughter and a named residual legatee in the Will of

---

6(...continued)
judgment on a claim for a debt, a remedy in connection with such claim.' As the emphasized text suggests, non-governmental plaintiffs cannot invoke the statute." Kelley v. College of St. Benedict, 901 F. Supp. 2d 1123, 1130 (D. Minn. 2012) (emphasis and omission of statutory paragraph numbers in original) (internal citation omitted) (quoting 28 U.S.C. § 3001(a)).

Roy C. Hairston probated September 26, 1976" (Docket Entry 37 at 7), (B) that, "[o]n January 4, 2007, Brooks signed an accommodation endorser for the benefit of the Estate of Irene Hairston" (id.), and (C) that "[t]he property pledged as security was . . . a plot and parcel comprising a part of the Estate of Irene F. Hairston per will from her spouse and his family" (id. at 8) – do not plausibly allege fraud, let alone "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b).[7]

The "Fourth Claim for Relief," in turn, asserts a cause of action against Brooks and CPCI for "avoidance of fraudulent transfer in violation of N.C. Gen[.] Stat[.] § 39-23[.]5(a)." (Docket Entry 37 at 8 (emphasis and all-caps font omitted).) The cited state statutory provision declares that "[a] transfer made . . . by a debtor is voidable [A] as to a creditor whose claim arose before the transfer was made . . . [B] if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and [C] the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." N.C. Gen. Stat. § 39-23.5(a). The fourth claim fails as a matter of law, because it lacks factual allegations showing [A] that, at the time of any property transfer from Brooks

---

7 Nor do the above-quoted allegations support the demand, "[a]s to Count Three, that [] Brooks be adjudicated guilty of . . . breach of contract, malicious prosecution" (Docket Entry 37 at 17), and/or "elderly abuse of a relative" (id.).

15

to CPCI, a debtor-creditor relationship existed between Brooks and Peggy M. Hairston Robinson (the only proper Plaintiff), [B] that Brooks did not receive a reasonably equivalent value from CPCI for any such transfer, and/or [C] that Brooks suffered from insolvency at the time or as a result of any such transfer. (See Docket Entry 37 at 8 (alleging only that, "in 2018, Brooks formed [CPCI]," that "[t]he specific intent of Brooks was to fraudulently transfer the property . . . out of reach of creditor of the Estate of Ms. Irene F. Hairston an, [sic] the rightful owner Leonard A. Robinson and Peggy M. Hairston Robinson," and that "Brooks made this transfer at a time when a suit was pending in Forsyth County to determine ownership right," "when this property remained a part and parcel of the Estate of Ms. Irene F. Hairston," and "when there were federal tax liens, monthly mortgage payments liens, and lis pendum liens . . . which exceeded the value of [the] property").)

Next, the "Fifth Claim for Relief" labeled as "Piercing the Corporate Veil" (id. at 8 (emphasis and all-caps font omitted)), alleges in pertinent part that:

1) "at all times relevant . . ., [] Plaintiffs herein assumed all monthly payments made to PNC Bank for [the property and] assumed all Federal tax liability" (id. at 9; see also id. ("[P]laintiffs assumed all financial responsibility and assumed all personal responsibilities and financial obligations associated with

[the property] and other properties associated with the Estate of Ms. Irene F. Hairston.'"));

    2) "[o]n or about July 2019, . . . during the time frame that [P]laintiffs were pursuing a judicial determination as to ownership of the property . . .[, ] Brooks formed [CPCI] as 'alter egos' for the sole purpose of concealing the immoveable property . . . from the Estate of Irene F. Hairston, the rightful owners" (id.);

    3) "the fruits paid to [Brooks] of $14,000.00 [on] or about April 2014 was the property of the Estate of Ms. Irene F. Hairston" (id.; see also id. (indicating that CPCI received proceeds "from timber sale of April 4, 2016"));

    4) "Collins . . . [and the] Alexander[s] were working in cahoots with alter ego [] Brooks to move the property . . . out of the reach of its rightful owners" (id.);[8] and

    5) "Brooks does know and has maintained as alto [sic] ego for [CPCI] an 'irresistible impulse' (specific intent) to fraudulently deprive her elderly aunt and uncle of their inheritance and retirement benefits by 'felony and theft of their assets to save the family'" (id. at 10).

In connection with the foregoing allegations, the Fifth Claim for Relief asserts that "the corporate veil should be pierced to read [sic] the assets held by [CPCI] and all its assets acquired by

---

    8 This lone conclusory allegation against the Alexanders and Collins does not support <u>any</u> claim against them (let alone one for corporate veil-piercing). <u>See generally Iqbal</u>, 556 U.S. at 678.

17

its ill-fated gains . . . ." (Id. at 9; see also id. ("As a result of [] Brooks['s] fraudulent transfer of immovable property as alto [sic] egos for [CPCI, the] corporate veil should be pierced to reach to assets held be [sic] [CPCI], including but not limited to the property . . . .").) "[I]f the North Carolina Supreme Court were faced with a choice of law question for piercing the corporate veil, it would adopt the internal affairs doctrine and apply the law of the state of incorporation." Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 349 (M.D.N.C. 1995); see also DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013) ("In a diversity case, a district court applies the conflict-of-law rules of the state where it sits.").[9] The Signed Amended Complaint alleges that CPCI "is believed to be organized under the laws of N.C." (Docket Entry 37 at 2-3) and, "therefore, North Carolina law will apply to [the] attempt to pierce [CPCI's] corporate veil," Dassault Falcon, 909 F. Supp. at 349.

_____

[9] The Original Complaint rested this Court's jurisdiction on "[d]iversity of citizenship." (Docket Entry 3 at 6.) Under the heading "Jurisdiction and Venue" (Docket Entry 37 at 2 (emphasis and all-caps font omitted)), the Signed Amended Complaint errantly relies only upon a venue statute as a basis for "jurisdiction over this matter" (id. (citing 28 U.S.C. § 1391(b)(2))), but elsewhere (consistent with the Original Complaint's assertion of diversity jurisdiction) the Signed Amended Complaint identifies Louisiana as the residence of Peggy M. Hairston Robinson (id. at 19) and Michigan and/or North Carolina as the "residenc[e]" and/or "domicile[]" of Defendants (id. at 2-3). Lastly, although (as discussed supra and infra) the Signed Amended Complaint invokes various federal statutes, none of them create any of the identified causes of action (which instead sound, if at all, in state law). As a result, no federal question jurisdiction arises in this case.

18

"In North Carolina . . . the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.'" <u>Glenn v. Wagner</u>, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). "[T]he instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation." <u>Id.</u>, 313 N.C. at 458, 329 S.E.2d at 332. Prior to its decision in <u>Glenn</u>,

> Th[e North Carolina Supreme] Court ha[d] enumerated three <u>elements</u> which support an attack on separate corporate entity under the instrumentality rule:
>
>> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>>
>> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>>
>> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

<u>Id.</u>, 313 N.C. at 454–55, 329 S.E.2d at 330 (quoting <u>B-W Acceptance Corp. v. Spencer</u>, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)) (emphasis added). The <u>Glenn</u> Court held that, in applying those three elements, courts should look not only to "<u>[f]actors</u> which

19

[t]heretofore ha[d] been expressly or impliedly considered in piercing the corporate veil," i.e., "[i]nadequate capitalization[, n]on-compliance with corporate formalities[, c]omplete domination and control of the corporation so that it has no independent identity[, and e]xcessive fragmentation of a single enterprise into separate corporations," id., 313 N.C. at 455, 329 S.E.2d at 330–31 (emphasis added) (internal citations, numbering, and parenthetical omitted), but also to factors such as "non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, non-functioning of other officers or directors, [and] absence of corporate records," id., 313 N.C. at 458, 329 S.E.2d at 332.

Given that standard, the prior quotations from the third, fourth, and fifth claims' allegations confirm that no arguable basis for veil-piercing exists here. Simply put, the Signed Amended Complaint does not include any factual matter remotely adequate to establish any of the Glenn elements (or even any subordinate factors). Most notably, the Signed Amended Complaint does not set forth a plausible claim against Brooks for fraudulent conveyance (or any other fraud), much less for a fraudulent conveyance (or any other fraud) committed via her total domination of CPCI. Accordingly, the Court should dismiss the Fifth Claim for Relief as frivolous and for failure to state a claim.

20

The "Sixth Claim for Relief" (Docket Entry 37 at 10 (emphasis and all-caps font omitted)), which purports to lie "against Charles M[.] and Heather R. Alexander" (id.), does not even identify a cause of action and alleges only [A] that "Charles M. Alexander was aware that Brooks was not the rightful owner of the property she purported to transfer to them" (id.) and [B] that, "[e]ven though not certain of the price paid to Brooks, it was legion beyond margin to the value of the rightful owner" (id.). Such conclusory and largely indecipherable allegations do not state a claim against the Alexanders, see generally Iqbal, 556 U.S. at 678, and suffer from such patent deficiency as to warrant dismissal of the sixth claim as frivolous, see generally Nietzke, 490 U.S. at 325.

Finally, the "Seventh Claim for Relief" presents causes of action for "withdrawal and negligent attorney representation[,] breach of fiduciary duty[, and] violation of code of professional conduct." (Docket Entry 37 at 10 (emphasis and all-caps font omitted).) Although the allegations within the seventh claim focus on purported deficient legal representation by Peebles (see id. at 10-16), the Signed Amended Complaint's "Prayer for Relief" (id. at 16 (emphasis and all-caps font omitted)) requests that, "[a]s to Count Seven, Attorney A.L. Collins be adjudicated guilty of conspiracy to fraudulently convey immovable property in violation

21

of 28 USC 3004 and N.C. Gen[.] Stat. 35 [sic]" (id. at 18),[10] as
well as that he "be held liable in solido [sic] with other federal
tortfeasors pursuant to 28 USC 2680 and state law statutes" (id.)[11]
and that he "be reported to the N.C. Bar Association for
discipline" (id.).  The lack of any factual matter regarding
Collins within the seventh claim, combined with the conclusory
nature of the only other substantive reference to him in the Signed
Amended Complaint (see id. at 9 (alleging in fifth claim that
"Collins . . . work[ed] in cahoots with alter ego [] Brooks to move
the property . . . out of the reach of its rightful owners")),
requires dismissal of any cause of action against Collins.  See
generally Iqbal, 556 U.S. at 678; Nietzke, 490 U.S. at 325.[12]

As to Peebles, the seventh claim alleges:

1) "[o]n or about May 10, 2017, prior to a court appearance in
Forsyth County, the Robinsons entered into a verbal contract with
. . . Peebles [] to represent Leonard A. Robinson, Peggy M.

---

10 As set out in the prior discussion above, Section 3004 of
the FDCPA does not create any private cause of action.

11 The above-referenced federal statutory section does not
create a cause of action available for use against private citizens
(like Collins); rather, it merely lists exceptions to the limited
waiver of sovereign immunity of the United States effected by the
Federal Tort Claims Act.  See 28 U.S.C. § 2680 (exempting certain
conduct from 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671 et seq.).

12 Likewise, the conclusory statement within the seventh claim
that "Thompson [] seized [Irene F. Hairston's] right to a
livelihood" (Docket Entry 37 at 15) cannot support a claim.  See
generally Iqbal, 556 U.S. at 678; Nietzke, 490 U.S. at 325.

22

Hairston Robinson and the Estate of Ms. Irene F. Hairston" (Docket Entry 37 at 10; see also id. at 11 ("Peebles was contacted and verbally retained on or about May 10, 2017 before the trial of June 6, 2017. . . . [He] was retained to represent the Robinsons personally and the [E]state of Ms. Irene F. Hairston with emphasis to bring conclusion and finality to the long litigated saga pending in the North Carolina courts" (emphasis omitted)));

2) Peebles "had an affirmative duty . . . to legally research the options under the will which was filed in North Carolina and governed by North Carolina immovable property law" (id. at 10-11);

3) "Peebles failed to properly and adequately represent the [E]state of Ms. Irene Hairston" (id. at 11; see also id. at 16 ("Peebles [] failed and neglected to work within the scope of his employment as set forth by Code of Professional Ethics."));

4) the Robinsons "specifically, legally hired [] Peebles to appeal the Judgment rendered 6/6/17 when [Peggy M. Hairston Robinson] spoke with [Peebles] in Washington on May 10, pending the outcome of [Peggy M. Hairston Robinson's] pro se[] motion at which time [Peebles] was to appeal the District Court decision of Dismissal with Prejudice" (id. at 11);

5) Peebles "knows or should know other appeal strategies available in similar situations" (id.), but "failed to appeal [the] dismissal with prejudice" (id.);

23

6) "[t]he record and financial statement are evidence of ill-practice and breach of fiduciary duty and lack of preparation and seriousness of purpose" (id.);

7) "Peebles state[d] 'that he was not prepared for trial on May 28 2018" (id. at 12 (unmatched quotation mark in original); see also id. ("At the time[, Peebles] voluntarily dismissed suit 19 CVS 5809. Instead he alone had anticipated that the Michigan group of heirs would not travel to N.C. for trial. Therefore, on May 18, 2018, [] Peebles filed and dismissed the Robinson suit without their permission as being in their best interest. This of course was an error of judgment."));

8) "Peebles knew or should have known or he should have aligned himself with an appropriate legal median [sic] source or a licensed Louisiana lawyer to research and recommend proper procedures for handling succession and estate matters in the State of Louisiana or he should not have taken the case" (id.; see also id. ("Ms. Hairston died interstate [sic] in the state of Louisiana where she had legally established her domicile."));

9) "Peebles legally raised the issues but he did not adhere to the rule requirements of Rule 11 nor do any research to conclude the legal issues involved" (id.; see also id. at 15 ("Peebles recognized Mr. Roy C. Hairston left his estate to Irene Hairston for her care and maintenance. Whether this took place in North Carolina or Louisiana or wherever, [Peebles] had a duty to explore

24

and present to the court . . . the facts.  He had a duty to explore whether or not Ruby died inteste [sic] and whether her heirs should take free and clear.  [Peebles] was obligated to explore the petition.  He was obligated to explore and present the facts to the court [about] the same parcel of land deeded to Cassandra Brooks and the circumstances surrounding the transfer.  [Peebles] was obligated to explore the $100,000.00 sale of inherited share of property, and the legality of the timber sale, where the timber remains a part and parcel of the [E]state of Ms. Hairston."), 16 ("Peebles as legal representative had an obligation under Rule 11 to make reasonable inquiry into the laundry list of issues presented to the court in his review and analysis."));

10) "Peebles knew that under N.C. law life's estate equals a dowry analysis" (id. at 12; see also id. at 13-14 ("[A] life estate in North Carolina is a wife's right to 1/3 of the land that she owns in fee as a dowry.  In this case Irene Hairston, a widow, had a right to 1/3-acre fee as her dowry[] as her statutory share of her husband's estate . . . .  Ms. Hairston's virgle [sic] share under North Carolina choice of law rule would calculate and translate to a dollar amount of $326,724.00 . . . at her death [on] September 23, 2006." (internal paragraph numbers omitted)));

11) Peebles's "bill as presented is in conflict with [the] engagement letter" (id. at 12; see also id. at 13 ("It took []

25

Peebles 3 months from time he was paid in full his retainer fee to issue a letter of representation.”));

12) “[o]n 9-29-17 – 2 days after employment, [] Peebles began communication with the defendants and billing the Robinsons” (id. at 13 (emphasis omitted); see also id. (“Peebles represented the defendants against his client . . . .”));

13) “[o]n 10-2-2017 – [] Peebles appeared at court requesting a continuance which was not needed and not part of the agreement or requested” (id. (emphasis omitted); see also id. (“Peebles had from May 10 until October 2, to prepare for the trial which was ample enough time.”));

14) “[t]he litigation conduct shows without a reasonable doubt that [] Peebles conspired[ and] corroborated with others about this case who advised him not to proceed” (id. at 13 n.1; see also id. at 16 (“Peebles simply joined sides with other attorney and clients against his clients. On November 8th, 2018, in the presence of the secretary, and other witnesses[, Peebles said] that ‘he practiced in a small town’ and that he wouldn’t represent [the Robinsons] against another lawyer in Forsyth County.”));

15) “[o]n 12-20-2017 – [] Peebles spent another hour in conversation with defendants at a charge to his client” (id. at 13 (emphasis omitted));

16) “[o]n 1-22-2018 – [Peebles performed l]egal research regarding responsibilities of heirs to provide for grandparents

26

under N.C. law [that] was not needed where [] Peebles was well aware that Louisiana succession law was the applicable law to be applied" (id. (emphasis omitted));

17) Peebles "had a copy of all succession estate bills and obligations documents in which bills occurred in Louisiana [and] this debt with full accounting was made available directly from 19th JDC probate records to [] Peebles who was employed to represent the [E]state of Ms. Hairston" (id. at 15);

18) "Peebles mischaracterized the claims being made by his clients in his representation" (id. at 15-16);

19) "Peebles produced no defense to the defense motion to dismiss and for [g]atekeeping orders or [the] motion for Rule 11 sanctions" (id. at 16; see also id. ("Peebles was employed to respond to [the] June 5 motion to dismiss. He made no legal entry.")); and

20) "[t]he [state] court ordered in open court that [] Peebles provide the Robinsons with a copy of the declaration page of his liability insurance" (id.), but Peebles "disobeyed [that] court order to date" (id.; see also id. ("On December 3, 2019, [Peebles] was a [r]ecalcitrant witness under 28 USC 1826(2) even though [he] was a non-party to the suit in state court, he is now a party in federal court therefore to section 28 USC 1826. The 21st JDC Judge Robinson ordered [Peebles] to produce the declaration page of his insurance policy. Peebles disobeyed a court order.")).

27

The foregoing allegations, though significant in volume, lack the coherence and substance necessary to state a viable claim under Iqbal (or even to articulate a claim with some "arguable basis either in law or in fact," Neitzke, 490 U.S. at 325). Put another way, this last set of causes of action amounts to nothing more than an internally inconsistent and/or otherwise disjointed factual narrative[13] interspersed with contradictory and/or conclusory legal assertions,[14] all of which fail to "nudge[ any] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570; see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Even in the case of pro se litigants, [courts] cannot be expected to construct full blown claims from sentence fragments

---

13 By way of illustration, the seventh claim first alleges that "Peebles was contacted and verbally retained on or about May 10, 2017" (Docket Entry 37 at 11), but also refers to "9-29-17 [as] 2 days after [his] employment" (id. at 13 (emphasis omitted)). It similarly discusses a date for "trial of June 6, 2017" (id. at 11) and a related "Judgment rendered 6/6/17" (id.) (which Peggy M. Hairston Robinson somehow already had retained Peebles to appeal nearly a month earlier "on May 10" (id.)), while simultaneously indicating that the trial would have occurred "[o]n 10-2-2017 [but for] Peebles appear[ing] at court requesting a continuance which was not needed" (id. at 13 (emphasis omitted); see also id. ("Peebles had from May 10 until October 2, to prepare for the trial which was ample enough time.")).

14 For example, the seventh claim irreconcilably insists that Peebles both should have known the dispute over "the will . . . [was] governed by North Carolina immovable property law" (Docket Entry 37 at 10-11) and should not have conducted research "under N.C. law [as it] was not needed where [he] was well aware that Louisiana succession law was the applicable law to be applied" (id. at 13). It likewise irrationally infers conspiratorial betrayal of client interest from the mere fact that Peebles communicated with the opposing side. (See id. at 13 & n.1.)

28

. . . ." (italics in original)).  As a result, the Court should dismiss the Seventh Claim for Relief.

**IT IS THEREFORE RECOMMENDED** that any claims of Leonard A. Robinson and the Estate of Irene F. Hairston be STRICKEN and that any claims of Peggy M. Hairston Robinson be DISMISSED.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 30, 2020